FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Mar 13, 2020**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VENERANDA B., o/b/o AGB, a minor child.,[1]<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, the Commissioner of Social Security,[2]<br><br>Defendant. | No. 4:19-CV-5074-EFS<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 12. Plaintiff Veneranda B. brings this lawsuit on behalf of her minor

---

[1] To protect the privacy of the adult social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff," and refers to the minor child by her initials. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

child AGB to appeal a denial of childhood disability benefits by the Administrative Law Judge (ALJ). Plaintiff alleges the ALJ erred by 1) failing to obtain a full case evaluation by a medical expert; 2) ignoring lay testimony from AGB's teacher; 3) improperly discounting the mother's testimony; and 4) improperly assessing the childhood domains. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding AGB not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 12.

## I. Three-Step Childhood Disability Determination

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3] The regulations provide a three-step process to determine whether a child satisfies the above criteria.[4] First, the ALJ determines whether the child is engaged in substantial gainful activity.[5] Second, the ALJ considers whether the child has a "medically determinable

---

[3] 42 U.S.C. § 1382c(a)(3)(C)(i).

[4] 20 C.F.R. § 416.924(a).

[5] *Id.* § 416.924(b).

impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."[6] Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments."[7]

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing.[8] The ALJ's functional-equivalence assessment requires the ALJ to evaluate the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are:

(1) acquiring and using information:

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for self; and

(6) health and physical well-being.[9]

---

[6] *Id.* § 416.924(c).

[7] *Id.* § 416.924(c)-(d).

[8] *Id.* § 416.926a(a).

[9] *Id.* § 416.926a(b)(1)(i)-(vi).

A child's impairment is deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain.[10] An impairment is a "marked limitation" if it "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."[11] An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."[12]

## II. Factual and Procedural Summary

On September 11, 2015, Plaintiff filed a Title XVI application for childhood disability benefits for AGB.[13] The claim was denied initially and upon reconsideration.[14] An administrative hearing was held before Administrative Law Judge Larry Kennedy in August 2017.[15]

---

[10] *Id.* § 416.926a(a).

[11] *Id* § 416.926a(e)(2)(i).

[12] *Id.* § 416.926a(e)(3)(i).

[13] AR 236-42. Plaintiff also previously filed a Title XVI application on January 6, 2015. AR 231-35. This claim was denied at the initial determination level in June 2015. Plaintiff did not appeal that denial and therefore that decision was final. AR 21.

[14] AR 107-30, 136-39, & 143-46.

[15] AR 51-96.

In denying the disability claim, the ALJ made the following findings:

- Plaintiff was a school-age, adolescent child when the application was filed;
- Step one: Plaintiff had not engaged in substantial gainful activity since September 11, 2015, the application date, which is considered the alleged onset date;
- Step two: Plaintiff has the following medically determinable severe impairments: anxiety, learning disorder, receptive and expressive language disorder, developmental delay disorder, cognitive disorder, headaches, and asthma with allergic rhinitis; and
- Step three: Plaintiff does not have an impairment or combination of impairments that met, or medically or functionally equaled, the severity of one of the listings.[16]

When assessing the medical-opinion evidence, the ALJ gave partial weight to the opinions of the State agency consultants at the initial and reconsideration stages (Sharon Underwood, Ph.D., Nevine Makari, M.D., Edward Beaty, Ph.D., and Charles Wolfe, M.D.) and the testifying medical expert Stephen Rubin, Ph.D.[17] The

---

[16] AR 15-41 (Pages 8 and 9, AR 28 & 29, of the ALJ's decision are swapped in the record).

[17] AR 29.

ALJ also gave little weight to the opinion of AGB's fifth grade teacher Arianne Wolcik and to the testimony of AGB's mother.[18]

Plaintiff requested review of the ALJ's denial by the Appeals Council, which denied review.[19] Plaintiff timely appealed to this Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[20] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[21] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[23] The Court considers the entire record as a whole.[24]

---

[18] AR 28-29.

[19] AR 1-5.

[20] 42 U.S.C. § 405(g).

[21] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[22] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[23] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[24] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and

Further, the Court may not reverse an ALJ decision due to a harmless error.[25] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[26] The party appealing the ALJ's decision generally bears the burden of establishing harm.[27]

## IV. Analysis

### A. Required Case Evaluation: Plaintiff established consequential error.

Plaintiff argues the ALJ erred by failing to obtain a case evaluation of the entire record by a medical expert as is required by *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003); Acquiescence Ruling (AR) 04-1(9); and 42 U.S.C. § 1382c(a)(3)(1). The Commissioner argues the ALJ satisfied his case-evaluation responsibility by having Dr. Stephen Rubin testify as the medical examiner at the hearing. In addition, the Commissioner relies on the record review completed by the four State agency consultants.

---

the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[25] *Molina*, 674 F.3d at 1111.

[26] *Id.* at 1115 (quotation and citation omitted).

[27] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

An ALJ is required to "make reasonable efforts to ensure that a "qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual."[28] The Ninth Circuit interpreted this "to mean that the ALJ is required to make reasonable efforts to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record."[29] Following *Howard*, the Social Security Administration issued AR 04-1(9), which states:

> To satisfy this requirement, the ALJ . . . may rely on case evaluation made by a State agency medical or psychological consultant that is already in the record, or the ALJ. . . may rely on the testimony of a medical expert. When the ALJ relies on the case evaluation made by a State agency medical or psychological consultant, the record must include the evidence of the qualifications of the State agency medical or psychological consultant.[30]

---

[28] 42 U.S.C. § 1382c(a)(3)(l).

[29] *Howard*, 341 F.3d at 1014 & n.2 ("There is a distinction . . . between having an expert evaluate a claimant with respect to that expert's particular specialty, and having an expert evaluate a claimant's case in its entirety, considering all of the medical records and determining whether those indicate that the claimant is disabled within the meaning of the Social Security Act.").

[30] 2004 WL 875081, 69 Fed. Reg. at *22580 (2004).

Here, while there is no dispute that AR 04-01(9)'s case-evaluation requirement applies, the ALJ did not indicate he relied on AR 04-1(9) or indicate which expert's evaluation he relied on under AR 04-1(9). The Court finds, notwithstanding Dr. Rubin's testimony and the case reviews completed by the agency consultants, the ALJ failed to satisfy his case-evaluation responsibilities.

1. Dr. Rubin

The Commissioner argues that the ALJ satisfied the case-evaluation requirement by calling Dr. Rubin. However, this argument is not persuasive for several reasons. First, Dr. Rubin, as a psychologist was only qualified to testify as to AGB's mental health and resulting limitations, not her physical impairments and resulting limitations (except to the extent they impacted her mental health).[31] No medical expert who reviewed the entire case record offered an opinion as to AGB's limitations resulting from her asthma with allergic rhinitis and chronic

---

[31] *See* AR 74 (Dr. Rubin testified, "I focused mostly on intellectual testing and psychological."); *see also Fithian v. Berryhill*, No. 3:16-cv-932-SI, 2017 WL 1502801, at *8 (D. Or. Apr. 26, 2017) ("[A]ll psychiatrists are M.D.'s, and although some psychiatrists may treat or specialize in physical impairments, not all do. Thus the mere fact that Dr. Jones is an M.D. does not mean her physical-limitation opinion deserves controlling weight."); *Williams v. Colvin*, No. 2:14-cv-00213-FVS, 2015 WL 5039911, at *8 (E.D. Wash. Aug. 26, 2015) (finding physical limitations were beyond the expertise of psychologist).

headaches. These physical conditions impacted her ability to attend and perform at school.[32] This impact was recognized by AGB's Individual Education Plan (IEP) team:

> [AGB's] medical conditions can manifest with social/emotional symptoms that have an adverse impact on her learning and success at school. She experiences anxiety that results in headaches or abdominal pain and sleep difficulties. Asthma and Alpha 1 Antitrypsin also reduce her stamina and ability to cope with the demands of school. [AGB] may benefit from a less demanding academic program in order to provide her with more support, reduce her stress levels, and decrease the strain on her health.[33]

---

[32] *See, e.g.*, AR 1094 (Dr. Wendy Eastman: "I suspect that her headaches are related to difficulty sleeping and anxiety related to school. Since she has difficulty sleeping and daily headaches that continue to worsen, I recommend starting a daily headache preventative medication now to help her feel better. This Daily Preventative Medication will not treat the anxiety or stress related to school but will help with sleep and hopefully decrease some of the hypersensitization. If she continues to struggle with anxiety, I would recommend PCP to evaluate to see if she may benefit from an anti-anxiety medication to help with anxiety and possible sensory issues related to her developmental delays."); AR 1131-71 (Public records summarizing medical care appointments); AR 1128 (noting approximately sixteen absences from school during sixth grade); AR 267 & 272 (Fourth grade teacher noted that AGB's "continuous absences ["due to illness or at dr. appointments"] hurt her academic progress.").

[33] AR 1112.

This record requires the testimony of a medical expert relating to Plaintiff's physical impairments and resulting limitations.[34]

Second, after Dr. Rubin reviewed the file for the administrative hearing, Plaintiff submitted additional educational records: AGB's sixth grade report card and the IEP created for AGB's seventh grade year.[35] These educational records are material to Plaintiff's position that AGB's intellectual disability impacts her ability to acquire and use information and attend to and complete tasks. For instance, in sixth grade, AGB earned one F, three Ds, one C, and one A, with the A being earned in a very basic reading class.[36] In addition, Plaintiff's sixth-grade teachers noted that AGB "did not use class time constructively," "frequently did not complete or do the assignments on time," and that her "poor attendance effects grade."[37] These comments support the mother's reports, as well as teacher and doctor reports, that AGB's academic abilities were hindered by her intellectual

---

[34] *See* 20 C.F.R. § 416.924a(b)(7)(v) ("We will consider how your temporary removal or absence from the [education] program [due to your impairment] affects your ability to function compared to other children your age who do not have your impairments.").

[35] AR 371-89 & 1105-49.

[36] AR 1111 & 1127-28.

[37] AR 1128.

disabilities, as well as her physical conditions of asthma, allergies, and chronic headaches—the latter being related to the academic anxiety that AGB suffers as a result of not being able to accomplish assignments in a timely manner.[38] Moreover, the record reflects that the cause of the delay of submitting these records to the ALJ were caused by the school's nonresponse to records requests and the time for reassessing the need for an IEP.[39] These educational records were material

---

[38] *See, e.g.,* AR 268 (Yara Palomarez: finding a "very serious problem" with completing class/homework assignments and working at a reasonable pace/finishing on time"); AR 642 (Dr. Peter Holden: "History of developmental delay with a learning disorder consistent with intellectual disability."); AR 1060 (Dr. Timothy Jordan: "[I]n testing today, she had particular difficulty with active working memory. This is a type of memory needed for mathematics and other subjects. Children have to learn to hold information [in] their head while they do something else and then come back to the original piece of information. This is particularly necessary in long division in math."); AR 1118 (IEP: "[H]er math disability is more severe than would be accounted for by her health conditions and supports an additional eligibility category of Specific Learning Disability.").

[39] *See* AR 56 (reporting that records were requested from the school district in July 2017, and a follow-up request was also made); AR 368; *see also* AR 1077 & 1094.

documents that Dr. Rubin needed to review to determine if it altered his opinion. A supplemental hearing was needed.[40]

Finally, assuming that the record was sufficiently complete at the time Dr. Rubin reviewed the record, Dr. Rubin testified that he was unable to review a significant portion of the then-current record:

> I have to admit, I had some trouble reading that very large file in 23F. I read some of it and couldn't actually read others. . . . I don't know if it's my computer or the extensiveness of the record. . . . I did not read that. . . . So, we don't have the latest updates, the photo gallery. So, I have to admit that I did not read all of the 147 pages.[41]

The ALJ's subsequent brief summary of one of the medical records authored by Timothy Jordan, M.D.—only 6 pages out of 147 pages—was not sufficient to constitute a review of the full record by Dr. Rubin.[42] The non-reviewed portion of the record contained the vast majority of AGB's medical records after January 5,

---

[40] Likewise, the ALJ commented during the hearing: "I then have the hearing, I take the testimony, I go back through the records again after the hearing, hold the record open to see if there's anything additional that comes in, I'll review that. And then I'll decide the case and let, if these new records, if there's any issues that come up, I may need supplemental proceedings." AR 94.

[41] AR 68-69; *see also* AR 29 ("Dr. Rubin was able to review the claimant's medical and school records, though he testified that he could not review the entire record due to computer problems.").

[42] AR 69-71 & 1056-61.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

2016, including medical records from AGB's treating doctors, Dr. Samuel Pai-Sun Yang, who opined that AGB's learning problems were likely related to birth asphyxia and that "[s]pecial education based on thorough neuropsychologic testing should be a priority," and Dr. Wendy Eastman's findings that AGB suffers chronic daily headaches due to "anxiety related to academic stress" and "[s]he is clearly not getting the extra academic support she needs at school."[43] These records support the mother's testimony that she struggled to get the schools to respond to AGB's educational challenges, and that it was not until the mother received assistance from a social worker, at the behest of the treating medical providers, to navigate the school's systemic requirements, that an IEP was developed. Moreover, that AGB's academic performance steadily declined as she moved up in grade levels and was expected to perform more tasks that demanded active-working memory skills is consistent with her mental impairments.

---

[43] AR 958-1104; *see also* AR 1077 ("We advised the family to focus on practical steps that will help [AGB] in terms of receiving special education services. This was also advised previously by Dr. Holden and Dr. Jordan but the local school district has not been very responsive in evaluating her with the appropriate neuropsychologic tests. Advocacy services through the ARC may be necessary and contact information was provided to the family.") & AR 1094 ("Providence Social Worker has been notified and are working with mother and schools. Hopefully they can get better services in place for the next academic year.").

On this record, Dr. Rubin's review does not constitute a case evaluation of the entire record as required by *Howard* and AR 04-1(9).

2. State Agency Consultants

The initial reviewing consultants, Sharon Underwood, Ph.D. and Nevine Makari, M.D., reviewed the record in 2015.[44] The reconsideration reviewing consultants, Charles Wolfe, M.D. and Edward Beaty, Ph.D., reviewed the record in January 2016.[45] Accordingly, each of these case evaluations were done well before the August 2017 ALJ hearing. Following these case reviews, medical records reveal, in part, continued treatment for AGB's asthma, chromosomal testing indicating that AGB's duplicate genomic material at the P-arm of the X chromosome within the 22.31 band was likely not contributing to her developmental delay, that Dr. Yang determined that Plaintiff's developmental difficulties were likely due to birth difficulties, that there was still no explanation for the moderate elevation of sweat chloride on two different testing occasions, AGB suffered chronic headaches, and AGB received poor grades in sixth grade, and an IEP was developed for AGB in seventh grade.[46] Given the significant development of the medical and educational record since the State agency

---

[44] AR 112-17.

[45] AR 128-30.

[46] AR 112-17, 125-30, 371-89, 815-21, 899-916, 929-48, 1006-27, 1033-54, 1056-61, 1063-67, 1077-78, 1087-93, & 1094-1128.

consultants conducted their review, these reviews cannot constitute the full-record evaluation required by *Howard* and AR 04-1(9).

Moreover, the record does not contain the qualifications of the State agency consultants. AR 04-1(9) requires the record to "include the evidence of the qualifications of the State agency medical or psychological consultant." The Commissioner argues that the reference to each doctor's area of practice (and related assigned medical specialty code) constitutes the required qualifications information. This information is not sufficient to constitute the required qualifications information. Section 1382c(a)(3)(I) requires "a *qualified* pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual" to evaluate the record.[47] Accordingly, the record must contain evidence that not only is that individual a pediatrician or otherwise specialized in a relevant field of medicine but also that the individual is *qualified*. To determine whether a pediatrician or other specialist is qualified to render an opinion as to a child claimant's impairment(s) requires more information than the doctor's name and medical specialty.

Based on this record, the ALJ erred as a matter of law and this error was consequential. The information submitted by Plaintiff following the hearing was new and material evidence for which the ALJ ought to have reopened the hearing and taken additional testimony from a qualified medical expert who reviewed the

---

[47] 42 U.S.C. § 1382c(a)(3)(I).

entire file before issuing his decision.[48] Remand is required so that the full case evaluation is conducted by a qualified pediatrician or other specialist as to AGB's physical and mental impairments—not solely the ALJ himself.

B.     Other Issues

Plaintiff also argued the ALJ erred by discounting AGB's mother's testimony; ignoring the functional assessment of AGB's fourth grade teacher, Ms. Palomarez; and failing to fully consider the evidence relating to domains 1, 2, 3, 4, and 6. Because remand is required due to the ALJ's failure to have a qualified pediatrician or other specialist conduct a complete review of the record, the Court need not address Plaintiff's other arguments. However, on remand, the ALJ is to consider the report of Ms. Palomarez. Although this report is before the application filing date (and therefore before the alleged period of disability),[49] Ms. Palomarez's

---

[48] 20 C.F.R. § 416.1444. *See also* 20 C.F.R. § 416.1453(c) (permitting the ALJ to issue his decision more than ninety days after the request for hearing is filed when there was good cause for extending the time period, such as when the claimant submits additional material evidence). *See also* AR 46-48 (letters from Plaintiff's law firm to ALJ seeking hearing decision after the ninety-day period expired).

[49] 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

report contains significant information.[50] Ms. Palomarez interacted with AGB during each fourth-grade school day. AGB's capabilities and limitations during her fourth-grade year as set forth in Ms. Palomarez's report, which was written only six months before the disability application, was evidence the ALJ must consider.[51] In addition, on remand, if the ALJ discounts AGB's mother's testimony because AGB only began to receive special education support during her seventh-grade year, the ALJ must more meaningfully articulate this basis on this record. A record that reflects the mother's continuous attempts to seek special education services for her daughter and her eventual need to obtain outside guidance from the medical providers and social workers in order to navigate the school's special education system requirements. Also, the record reflects that AGB's learning disability limits her ability to perform tasks that require her to use her active-working memory—a skill that is relied on more in higher grades than in earlier elementary grades.

## C.     Remand for Further Proceedings

Plaintiff requests that the ALJ's decision be vacated. The decision whether to remand for further proceedings or immediately award benefits turns upon the likely utility of further proceedings.[52] Here, the Court finds that remand for further

---

[50] 20 C.F.R. § 416.924a(a)(2)(iii).

[51] *Id.* § 416.912(b).

[52] *Barman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

proceedings is required. The ALJ must call both a pediatrician (or other medical specialist) and a psychologist/psychiatrist to evaluate AGB's case in its entirety, and then re-evaluate whether AGB is disabled, including evaluating the report completed by Ms. Palomarez and reevaluating AGB's mother's testimony.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 13th day of March 2020.

s/Edward F. Shea  
EDWARD F. SHEA  
Senior United States District Judge